**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 06-6395**

─────────

UNITED STATES OF AMERICA,

　　　　　　Plaintiff - Appellee,

　　　v.

CHESTER EDGERTON,

　　　　　　Defendant - Appellant.

─────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Terrence W. Boyle, District Judge.   (5:03-cr-00301-BO)

─────────

Argued:  May 13, 2008　　　　　　Decided:  June 27, 2008

─────────

Before TRAXLER and GREGORY, Circuit Judges, and Alexander WILLIAMS, Jr., United States District Judge for the District of Maryland, sitting by designation.

─────────

Affirmed by unpublished per curiam opinion.

─────────

**ARGUED:** Lewis Alston Thompson, III, BANZET, THOMPSON & STYERS, PLLC, Warrenton, North Carolina, for Appellant.  Anne Margaret Hayes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Steve R. Matheny, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Chester Edgerton appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate based on his attorney's failure to file an appeal on his behalf. Because Edgerton has not shown that a rational defendant in his circumstance would have wanted to appeal or "reasonably demonstrated" that he expressed interest in appealing, we must affirm.

I.

On December 1, 2003, Edgerton pled guilty to possession with intent to distribute more than 50 grams of cocaine base, cocaine and marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924; using, carrying and possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and, maintaining a place for the purpose of manufacturing, distributing or using a controlled substance, in violation of 21 U.S.C. § 856(a). On May 4, 2004, Edgerton was sentenced, without a plea agreement, to a 352-month term of imprisonment. He did not appeal.

Edgerton claims, however, that he requested his attorney, Mark Edwards, to file an appeal. When no appeal was filed, Edgerton filed a motion to vacate pursuant to 28 U.S.C. § 2255,

3

alleging that Edwards failed to file a notice of appeal despite his request to do so. An evidentiary hearing was held where Edgerton was represented by new counsel.

At the evidentiary hearing, Edgerton testified that while he was in the Franklin County Jail following his sentencing, he phoned Edwards and requested an appeal. Edgerton testified that Edwards "said he would look into it." (J.A. 53.) Edgerton could not recall when this phone call was made - only that he was in the Franklin County Jail "for something over a month." (J.A. 52.) Prior to this phone conversation, Edgerton had not discussed his appellate rights or "any grounds or possible appeal issues." (J.A. 53.)

To the contrary, Edwards testified that he did not recall ever talking to Edgerton after he was sentenced, and he had no recollection of ever talking to Edgerton about the advisability of an appeal.[1] (J.A. 46-47.) More specifically, Edwards testified that he did not recall having a telephone conversation with Edgerton about his appeal. (J.A. 55.)

Edwards also testified that when a client specifically asks him to file an appeal, he does so. He even goes so far as to

---

[1]Edwards also noted that his recollection was unclear because his Edgerton records were maintained on a computer software program that was no longer working. (J.A. 47.)

4

file Anders[2] briefs on behalf of clients. Further, Edwards stated that had there been discussions regarding an appeal, he would have advised Edgerton to not seek an appeal because there were "no grounds to pursue" and an appeal could "kill any chance Edgerton might have [had] of coming back on a Rule 35" motion. According to Edwards, Edgerton expressed an interest in cooperating with authorities as his sentencing date approached in the hopes of obtaining a reduced sentence.

In addition, Edwards vaguely remembered Edgerton being offered a written plea agreement, which he did not sign. Edwards testified that the proposed plea likely contained an appeal waiver provision as that was the policy of the United States Attorney Office at the time. (J.A. 44-45.) After hearing this conflicting testimony, the district court found Edwards's testimony credible and dismissed Edgerton's claim.


II.

Edgerton argues that the district court erred in dismissing his § 2255 motion. He contends that Edwards disregarded his request to file a notice of appeal and, therefore, was ineffective as counsel. In response, the government contends

---

[2]Anders v. California, 386 U.S. 738 (1967).

5

that there is no evidence, other than Edgerton's own speculative recollections, that a discussion took place between Edgerton and Edwards concerning an appeal.

"When reviewing an appeal from the denial of a § 2255 motion, we review de novo the district court's legal conclusions." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007) (citing United States v. Nicholson, 475 F.3d 241, 248 (4th Cir. 2007)). The district court's factual findings are reviewed for clear error. See Mickens v. Taylor, 240 F.3d 348, 360 (4th Cir. 2001). The Supreme Court has long recognized that under the Sixth Amendment the right to counsel includes "the right to effective assistance of counsel." U.S. Const. amend. VI.; see also McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In order to establish a Sixth Amendment violation based on counsel's failure to appeal, Edgerton must prove that (1) counsel was ineffective and (2) but for counsel's ineffectiveness, an appeal would have been filed. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). While the Constitution does not give a criminal defendant the right to appeal as a matter of right, the United States Code, 18 U.S.C. § 3742, does. Thus, an attorney's failure to file an appeal after being instructed by his client to do so is per se ineffective. Flores-Ortega, 492 F.3d at 483.

In Flores-Ortega, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. In making this determination, we must "take into account all the information counsel knew or should have known" and consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id. A presumption of prejudice also applies, even if a defendant did not instruct his attorney to file an appeal, when the defendant can show, had he received reasonable advice from his attorney, that he would have instructed his attorney to file a timely notice of appeal. Id. at 486. Whether a defendant meets this standard turns on the specific facts of each case. Id.

As noted above, Edgerton maintains that he telephoned Edwards after his sentencing and requested that he file an appeal. The district court found, based on Edwards's testimony, that Edgerton did not unequivocally instruct Edwards to file a timely notice of appeal. Given Edgerton's sparse and non-

7

specific recollections, the district court's credibility finding is not clearly erroneous.

Notwithstanding this, Edgerton contends that Edwards, nevertheless, was ineffective because he failed to consult with him regarding an appeal. See United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000). He points out that not only does he not recall Edwards advising him of his appeal rights but that Edwards similarly testified to not recalling having a conversation with him. Further, Edgerton argues that he had a rational basis for filing an appeal and was prejudiced by Edwards's failure to do so; that is, (1) he allegedly rejected a plea agreement with the Government to preserve his right to appeal, and (2) had an appeal been filed, his sentence could have been reviewed in light of Blakley v. Washington[3] and United States v. Booker.[4] Thus, the salient issue is "whether the failure to consult itself constitutes deficient performance." Flores-Ortega, 528 U.S. at 478.

The Supreme Court has rejected a bright-line rule requiring counsel to always consult with a defendant regarding an appeal. Flores-Ortega, 528 U.S. at 480. Proffering an example similar

---

[3]542 U.S. 296 (2004).

[4]543 U.S. 220 (2005).

8

to Edgerton's case, the Supreme Court reasoned that when a defendant does not express an interest in appealing and counsel concludes that there are no nonfrivolous grounds for an appeal "it would be difficult to say that counsel is 'professionally unreasonable' as a constitutional matter, in not consulting with a defendant regarding an appeal." Id.

Indeed, it is difficult in this case to say that Edwards's failure to consult with Edgerton was professionally unreasonable. Under the Flores-Ortega standard, Edgerton has not shown that a rational defendant in his circumstance would have wanted to appeal or "reasonably demonstrated" that he expressed an interest in appealing. While Edgerton argues that he specifically turned down a plea agreement to appeal, he only provides conjecture as evidence that such was his reasoning at the time.

At the evidentiary hearing, Edgerton did not testify that he rejected the plea agreement to preserve his appellate rights. Coupled with Edwards's uncertainty as to whether the plea agreement actually contained an appeal waiver - Edgerton's argument, it "most likely contained an appeal waiver," is unpersuasive. A defendant who specifically rejects a plea agreement for the purpose of protecting his appellate rights would know whether the agreement actually contained a waiver.

9

Further, Edgerton fails to even articulate a ground he would have raised on appeal. Although a defendant need not prove his "hypothetical appeal might have had merit," a hypothetical ground for appeal is highly relevant to determining whether Edgerton has been prejudiced or even expressed a desire to appeal. Flores-Ortega, 528 U.S. at 485-486. Edgerton does, however, posit that had an appeal been filed he may have reaped the benefits of Blakely and Booker. While this maybe true, we are confined to the information known or should have been known to Edwards at the time.

At the time of Edgerton's sentencing, Blakely was before the Supreme Court but not yet decided and certiorari had not yet been granted in Booker. Thus, it is purely speculative that he would have "reaped the benefits" of these decisions. Under the mandatory guidelines regime Edgerton was facing a significant term of imprisonment. After he received a sentence at the bottom of his guideline range, Edwards testified that the defense strategy was to cooperate with the government in the hopes of receiving a sentence reduction under Federal Rule of Criminal Procedure 35(b). This was a reasonable strategy given Edwards's assessment that there were no other reasonable grounds to pursue and Edgerton had expressed an interest in cooperating with the government. Edwards also testified that had Edgerton

10

expressed interest in appealing he would have advised him that an appeal could have jeopardized his chance of receiving a Rule 35 sentence reduction.

We have held that an attorney must file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to a plea agreement and harmful to the client's interest. United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007). Despite Edwards's concerns, he would have still been required to file a notice of appeal - had Edgerton unequivocally instructed him to do so. Because the district court's finding that Edgerton did not do so withstands clear error review, we cannot hold that Edwards acted "professionally unreasonable," as a constitutional matter. And while it is disconcerting that Edwards did not consult with Edgerton regarding his appellate rights, there is no evidence demonstrating Edgerton was prejudiced by the failure or had anything to gain from appealing. The Supreme Court and this Court recognizes that "the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal." Flores-Ortega, 528 U.S. at 479. But it is not the standard and, thus, Edgerton's claim fails.

11

III.

For the foregoing reasons, the district court's judgment is

AFFIRMED.